RENDERED:  DECEMBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1827-MR

THE CARDINALS' NEST EGG
TRUST                                                          APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCHELL PERRY, JUDGE
ACTION NO. 18-CI-400336

SANDTON CREDIT SOLUTIONS
MASTER FUND III, LP                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MCNEILL, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  The Cardinals' Nest Egg Trust ("CNET") appeals a judgment of the Jefferson Circuit Court on cross-motions for summary judgment, finding Sandton Credit Solutions Master Fund III, LP's ("Sandton") judgment lien had first priority.  CNET argues the trial court erred in denying it relief under the

doctrine of equitable subrogation. After careful review, finding no error, we affirm.

This action began when The Bank of New York Melon ("BNYM") foreclosed on Norman and Anna Risen's ("the Risens") mortgage note. On June 25, 2018, in an alleged attempt to assume the Risens' mortgage and avoid foreclosure, CNET wired BNYM the outstanding balance of the mortgage. CNET did not record any type of mortgage document at the time. On July 6, 2018, Sandton recorded a judgment lien on the property. On July 14, 2018, BNYM released its mortgage on the property. On August 14, 2018, CNET recorded its mortgage on the property.

CNET then moved to reopen the foreclosure action and added Sandton as a party. CNET sought to file an intervening complaint and subordinate Sandton's lien under the doctrine of equitable subrogation. Sandton and CNET filed cross-motions for summary judgment about a year later. Following a hearing, the trial court granted summary judgment in favor of Sandton. This appeal followed.

On appeal, CNET argues the trial court erred in granting Sandton's motion for summary judgment because the doctrine of equitable subrogation applies. "We review *de novo* the trial court's grant or denial of a motion for summary judgment." *Community Financial Services Bank v. Stamper*, 586 S.W.3d

737, 741 (Ky. 2019) (citing *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014)).

Under Kentucky law, lien priority is determined under the "race-notice" rule. KRS[1] 382.270 provides that "[n]o mortgage, deed or deed of trust conveying real property is valid against a purchaser for a valuable consideration, without notice thereof, or creditors until it is properly filed." *Wells Fargo Bank, Minnesota, N.A. v. Commonwealth, Finance and Admin., Dep't of Revenue*, 345 S.W.3d 800, 804 (Ky. 2011). KRS 382.280 states that "[a] mortgage, deed or deed of trust shall take effect at the time it is filed." *Id.* Together, these statutes require a lienholder to "be the first to file the mortgage, deed or deed of trust" and "lack actual or constructive knowledge of any other mortgages, deeds or deeds of trust related to the property" to have priority over another lienholder's interest in the property. *Id.*

In addition to the recording statutes that create the race-notice rule, Kentucky courts also apply the common law "first in time, first in right rule" in determining lien priority:

> This Court has long held [that] the first creditor to file its lien enjoys the first right to the debtor's property. This general rule of lien preference has become known as "first in time, first in right." [*Indiana*] *Truck Corp. of Ky. v. Hurry Up Broadway Co.*, 222 Ky. 521, 1 S.W.2d 990 (1928). It is without question, however, that the

---

[1] Kentucky Revised Statutes.

Kentucky General Assembly is empowered to create statutory liens and establish their priorities; but, absent a statute giving precedence to a statutory lien, its rank is determined under the principle of first in time, first in right. *Midland-Guardian Co. v. McElroy*, 563 S.W.2d 752 (Ky. App. 1978).

*Wells Fargo Bank*, 345 S.W.3d at 804.

Kentucky recognizes the doctrine of equitable subrogation as an exception to the first in time, first in right rule. "Equitable subrogation permits a creditor who pays the debt of another to stand in the shoes of the original creditor, enjoying all rights and remedies of the original creditor." *Mortgage Electronic Registration Systems, Inc. v. Roberts*, 366 S.W.3d 405, 408 (Ky. 2012) (quoting *Wells Fargo*, 345 S.W.3d at 806). The purpose of equitable subrogation "is to prevent unjust enrichment at another's expense." *Id.* at 411. Under Kentucky law, "equitable subrogation is barred if the subsequent lienholder has actual *or* constructive knowledge of the existing lien." *Id.* (citing *Wells Fargo*, 345 S.W.3d at 807). "A party seeking to invoke the doctrine of equitable subrogation bears the burden of proving the applicability of the doctrine." *Wells Fargo Bank*, 345 S.W.3d at 807.

Cases involving equitable subrogation typically address each party's culpability for a defective title examination. *Id.* at 808. However, in this instance, neither party conducted a defective title examination. When CNET examined the title to the Risens' property, BNYM held the only recorded mortgage on the

-4-

property. When Sandton recorded its judgment lien, there were no recorded liens on the property.

The facts do not support application of the doctrine of equitable subrogation. CNET argues equitable subrogation entitles it to first priority because CNET did not have actual or constructive notice of Sandton's lien when it paid off the mortgage note and because BNYM released the underlying mortgage "by mistake" instead of assigning it to CNET. Appellant's Brief at 4. CNET asserts the due diligence it performed prior to paying off BNYM's mortgage note revealed that CNET's lien would have first priority.

CNET's interpretation of the equitable subrogation doctrine is incorrect. The relevant inquiry is not whether CNET had notice of Sandton's lien at the time it paid BNYM's mortgage, but whether CNET had notice of Sandton's lien at the time it recorded its mortgage lien. *Roberts*, 366 S.W.3d at 411. CNET paid the outstanding balance on BNYM's mortgage loan. At that time, there were no known recorded liens on the property. Sandton recorded its judgment lien before CNET recorded its mortgage lien. By the time CNET recorded its lien, it had actual or constructive notice of Sandton's recorded judgment lien.

CNET knew or should have known that failing to diligently pursue an assignment of BNYM's recorded mortgage lien or failing to quickly record its lien could result in another lienholder taking first priority. Although CNET intended to

take an assignment of the mortgage, it is undisputed that BNYM did not assign its interest to CNET when CNET paid the outstanding balance on the Risens' mortgage note. CNET argues BNYM released its mortgage lien in error but provided no evidence that BNYM meant to assign its mortgage to CNET aside from a self-serving affidavit. Furthermore, CNET waited to record its mortgage lien until after Sandton recorded its judgment lien and fifty days after it paid off BNYM's mortgage note. The doctrine of equitable subrogation does not aid the negligent. *Wells Fargo Bank*, 345 S.W.3d at 807.

CNET argues Sandton will be unjustly enriched by receiving first priority. Although Sandton will benefit from gaining first priority, it will not be unjustly enriched as it will receive only the amount of its judgment. *Roberts*, 366 S.W.3d at 411. As Sandton recorded its judgment lien before CNET filed its mortgage lien and CNET presented no compelling evidence that the equitable subrogation doctrine applies, it is undisputed that Sandton has first priority under the recording statutes.

For the foregoing reasons, we affirm the summary judgment of the Jefferson Circuit Court.

ALL CONCUR.

-6-

BRIEFS FOR APPELLANT:      BRIEF FOR APPELLEE:

J. Gregory Joyner      W. Scott Stinnett
Louisville, Kentucky      Louisville, Kentucky